IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
November 28, 2006 Session

## STATE OF TENNESSEE v. JIKINTE LASHANE MORRIS

**Appeal from the Circuit Court for Bedford County**
**No. 15828     Robert Crigler, Judge**

---

**No. M2005-02909-CCA-R3-CD - Filed February 26, 2007**

---

The defendant, Jikinte Lashane Morris, was convicted of sale of a schedule II drug, fined $3,000, and sentenced to eleven years and nine months as a Range I standard offender.  On appeal, Defendant argues that the evidence is not sufficient to support his convictions, and that the trial court abused its discretion by denying the jury access, as part of its deliberations, to the surveillance video introduced as evidence at trial.  We conclude that the evidence is sufficient and that the trial court did not abuse its discretion regarding the surveillance video.  Thus, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed.**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which DAVID G. HAYES and NORMA MCGEE OGLE, JJ., joined.

Fannie J. Harris, Nashville, Tennessee, for the appellant, Jikinte Lashane Morris

Robert E. Cooper, Jr., Attorney General and Reporter; Elizabeth Marney, Assistant Attorney General; W. Michael McCown, District Attorney General; Michael D. Randles, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

In June 2005 the defendant, Jikinte Lashane Morris, was indicted by a Bedford County grand jury on two counts of delivery and sale of 0.5 grams or more of a substance containing a cocaine base, a Schedule II controlled substance, in violation of Tennessee Code Annotated § 39-17-417.  After a jury trial in Bedford County Circuit Court, the defendant was convicted on both counts and sentenced to eleven years, nine months in prison as a Range I standard offender.  The defendant appeals, challenging the sufficiency of the evidence supporting his conviction and claiming that the trial court abused its discretion by denying the jury access to the surveillance video entered into evidence at trial.  We affirm the trial court's ruling, as we conclude that the evidence was sufficient

to support the defendant's conviction and that the trial court did not deny the jury the opportunity to view the surveillance video.

## FACTS

In November 2004, Mark Green, a former Bedford County pharmacist whose license was suspended in 2000 as a result of his drug use, volunteered to serve as a confidential informant with the Seventeenth Judicial District Drug Task Force. At trial, Green testified that on December 14, 2004, while working for the Task Force, he made a telephone call to Cedrick Lyttle, who agreed to deliver two "eight balls," approximately seven grams of cocaine, in exchange for $300.00. Following the call, members of the Task Force searched Green, set up audio and video surveillance equipment[1] in the kitchen of Green's home, and advised Green to keep all transactions in front of the camera. One of the Task Force agents, Billy Ostermann, remained at the Green house to witness the transaction from a bedroom.

At 6:30 or 6:45 that evening, Lyttle arrived in the kitchen of Green's house and showed him a baggie containing crack cocaine. Based on his experience, Green testified that he knew that the weight of the bag was not seven grams, as had been agreed upon. After haggling over price, the two men agreed to a $220.00 sale price for the quantity of cocaine. At that point, Lyttle stated that he could get the remaining $80.00 worth of cocaine, and he exited the house. Lyttle returned a short time later with the defendant, Jikinte Morris, who appeared on the surveillance video at that point.

Green testified that once the defendant arrived, the defendant stated that he had seven grams of cocaine on his person and produced a large bag of crack cocaine sealed in cellophane. After Lyttle refused to refund the $220.00 so that Green could buy from the defendant alone, the defendant produced a second bag of crack cocaine, returning his first bag to his pocket. The defendant then opened the bag that Lyttle initially sold to Green and poured cocaine from Lyttle's bag into the defendant's second bag. At that point, Green paid the defendant $80.00. Images of the above actions appeared on the surveillance video.

Ostermann's testimony at trial described the techniques used by the Task Force in planning and recording drug buys. Regarding the events in question, he testified that he was watching a monitor while the events unfolded. He also testified that he later viewed the surveillance video of the events that occurred on December 14, 2004, and that the video was a true and accurate depiction of those events.

Tim Miller, a deputy with the Lincoln County Sheriff's Department, testified that he monitored the transactions by audio tape across the street from Green's house and could hear and understand the discussion about money and the weight of the drugs, though he had no way of viewing the events as they occurred. Miller also stated that he retrieved the plastic bag containing the cocaine from in front of the camera once the defendant and Lyttle left, then sealed and labeled

---

[1]This resulting video and audio recordings were introduced as evidence at trial.

the bag before transferring the evidence to Tim Lane, director of the Task Force. Lane in turn transmitted the bag to the TBI Crime Laboratory, whose tests confirmed that the substance was cocaine.

For his part, the defendant did not testify at trial, nor did he offer any witnesses on his behalf. The defendant attempted to build his case solely upon impeaching the credibility of the state's witnesses. For example, on cross examination Green revealed that he was a recovering cocaine addict with prior convictions for theft and a pending conviction for theft. Green also admitted that he was not listening to some questions asked on direct.

After the jury began deliberating, jury members made a request to view the surveillance video. The judge noted that the video equipment and the screen used to view the surveillance video could not be moved from the court room to the jury room. The judge then asked whether a lay person could operate the machinery. Ostermann replied that the equipment belonged to his agency, was rather new, and he was concerned that if a wrong button was pushed, it would be difficult to get the equipment operating properly once again. Therefore, the judge ruled that the jury would view the video in the courtroom, and that both he and Ostermann would remain in the courtroom to ensure that the video equipment was being properly operated. Counsel for both parties, the defendant, and the court reporter were also present while the jury viewed the video.[2] The judge allowed the jury to indicate which parts of the tape they wanted to watch, but he ordered them to refrain from discussing the video until they had retired to the jury room for their deliberations. After spending several minutes watching the video without discussing it in court, the jury returned to the jury room to resume deliberating.

## ANALYSIS

### *Sufficiency of Evidence*

An appellate court's standard of review when the defendant questions the sufficiency of the evidence on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). The court does not reweigh the evidence; rather, it presumes that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the state. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Questions regarding witness credibility, conflicts in testimony, and the weight and value to be given to evidence were resolved by the jury. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). A guilty verdict removes the presumption of innocence and replaces it with a presumption of guilt, and on appeal the defendant has the burden of illustrating why the evidence is insufficient to support the jury's verdict. Id.; State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

---

[2]The record gives a detailed account of each instance when a juror requested that a particular part of the video be played or repeated.

The defendant was convicted of selling a controlled substance, which required the state to prove, beyond a reasonable doubt, that defendant knowingly delivered or sold a controlled substance. Tenn. Code Ann. § 39-17-417(a)(2)-(3) (2003).

The defendant argues that Lyttle was the individual who negotiated the drug sale and delivered the drugs to Green, and that the defendant was not seen in the video giving drugs to Green, receiving money from Green, or transferring drugs from one envelope to the other. Furthermore, the defendant contends that Green and his testimony could not have been reliable because the informant lacked credibility. However, such contentions are without merit. First, the issue of Green's credibility is inappropriate for this appeal, as matters of credibility are entrusted to the jury and will not be disturbed upon appeal. Bland, 958 S.W.2d at 659; State v. Locust, 914 S.W.2d 554, 558 (Tenn. Crim. App. 1995).

The defendant argues that he did not appear on the video giving or selling drugs to the informant. However, Green, the informant, offered undisputed testimony that members of the Task Force searched Green, set up the audio and video equipment, and advised the informant to keep the drug sale in front of the video camera that was positioned in the kitchen. While Lyttle and Green were the initial parties to the transaction, the surveillance video clearly shows that the defendant ultimately arrived at the informant's house with two bags of cocaine, accepted money from the informant, and transferred cocaine from one bag to another. The video recording of these actions and the testimony of the state witnesses, especially that of Green, constitute sufficient evidence that the defendant committed the acts for which he was convicted, and that he possessed the requisite knowing mental state at the time of his offenses. Any rational jury could and most likely would so find.

*Jury's Inability to View Video in Jury Room*

The Tennessee Rules of Criminal Procedure state, "Unless for good cause the court determines otherwise, the jury shall take to the jury room for examination during deliberations all exhibits and writings, except depositions, that have been received in evidence." Tenn. R. Crim. P. 30.1. The Advisory Commission Comments state that such good cause for keeping an exhibit from the jury room includes "that the exhibit may endanger the health and safety of the jurors, the exhibit may be subjected to improper use by the jury, or a party may be unduly prejudiced by submission of the exhibit to the jury." Here, the judge allowed the jury to view the surveillance video in open court, with counsel and the defendant present, because the video equipment could not be moved to the jury room.

It would have been preferable for the judge and the officer whose agency owned the equipment to instruct the jury as to how to use the equipment and then excuse themselves from the courtroom. The judge, after considering both the state's and the defendant's position found that this course of action was not appropriate. This court notes that the trial judge's refusal to let the jury attempt to operate the equipment before proceeding as it did was not a wise decision and should be

avoided by trial courts in the future. Still, there is no proof to indicate that the defendant was prejudiced by the judge's ruling regarding the surveillance video. The jury was permitted to view the video and had unfettered discretion as to which parts of the video it wanted to view and how often it wanted to view these parts. Furthermore, the judge's ruling that the jury could not discuss the video while watching it helped maintain the secrecy of jury deliberations. The judge's actions did not violate Rule 30.1 and thus do not constitute an abuse of discretion on the trial court's part.

## CONCLUSION

The defendant's appearance on the video selling cocaine to the informant and transferring the drugs from one bag to another, coupled with the informant's testimony at trial, constitutes sufficient evidence to support a conviction for sale of a controlled substance. And while the jury was, for logistical reasons, unable to view the surveillance video in the jury room, the jury was able to view the video in the courtroom and then discuss the video privately in the jury room. Therefore, the defendant was not prejudiced by the jury's failure to view the tape in the jury room. The judgment of the trial court is affirmed.

_____
D. KELLY THOMAS, JR., JUDGE